UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Tasia Williams and Vincent Doyle, § § Plaintiffs § § vs. § § § City of Dallas, Texas; Chief Ulysha Reneé § Hall; John Doe Police Officers 1–50, § § § Defendants § | | CIVIL CAUSE NO. 3:20-cv-01526-G |

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

**Michelle Simpson Tuegel**
TX Bar No. 24075187
*Admitted*
**THE SIMPSON TUEGEL LAW FIRM**
3301 Elm St.
Dallas, Texas 75226

**Daryl K. Washington**
TX Bar No. 24013714
*Admitted*
**WASHINGTON LAW FIRM, PC**
325 N. St. Paul St.,
Suite 3950
Dallas, Texas 75201

**Daniel A. Dailey, Esq.**
IL Bar No. 6312616
*Admitted*
**Tatiauna J. Holland, Esq.**
TX Bar No. 24090519
**Adam Greenfield**
TX Bar No. 24075494
*Admitted*
**KINGDOM LITIGATORS, INC.,** *A Public Interest Law Firm*
100 Crescent Court
Ste. 700
Dallas, Texas 75201

**Morgan A. McPheeters**
TX Bar No. 24081279
*Admitted*
**MCPHEETERS LAW, PLLC**
4447 N. Central Expy.,
Suite 101 #158
Dallas, Texas 75205

**Jessica Foster**
TX Bar No. 24094123
*Admitted*
1408 N. Riverfront Blvd.,
Suite 241
Dallas, Texas 75207

**George Oginni**
TX Bar No. 24108191
**LEO & OGINNI TRIAL LAWYERS, PLLC**
3801 Kirby, Suite 605
Houston, Texas 77098

**ATTORNEYS FOR PLAINTIFFS**

To the Honorable Judge of this Court:

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs Tasia Williams and Vincent Doyle file this Motion for Temporary Restraining Order and Brief in support thereof, urging this Court to issue a temporary restraining order against the City of Dallas and City of Dallas Police Chief Renee Hall, enjoining them from future use of tear gas, smoke bombs, flash-bang grenades, Pepper Balls, mace, and other chemical agents, as well as what are known as kinetic impact projectiles ("KPIs"), such as rubber, sponge, and foam bullets, against protesters, bystanders, and press who are not posing any immediate threat of serious harm to anyone and/or as a means of "crowd control."

In support of this Motion, Plaintiffs hereby incorporate by reference as if set forth herein (1) Plaintiffs' Original Complaint filed in this Court on June 11, 2020, (2) Plaintiffs' Brief in Support of Motion for Temporary Restraining Order, and (3) Plaintiffs' Appendix in Support of Motion for Temporary Restraining Order. Plaintiffs would respectfully show the Court the following:

## I.  INTRODUCTION

This is an action to defend the First and Fourth Amendment rights of peaceful protestors, bystanders, and press participating in demonstrations against police brutality and racial injustice in Dallas, Texas. Irreparable harm will result without a temporary restraining order immediately enjoining the City of Dallas Police Department ("Dallas Police" or "DPD"), Chief Renee Hall, and DPD officers from using so-called "less lethal" weapons for crowd control or against non-threatening protesters. During protests in Dallas occurring every single day since May 29, 2020, Defendants have continually targeted protesters using weapons the DPD, the City, and Chief Hall consider "less lethal"—but which are not "nonlethal." But a weapon that is only (allegedly)

*less* lethal is, in fact, still lethal. Accordingly, this use of lethal force against protesters, bystanders, and press who are not posing any immediate threat of serious harm to anyone amounts to excessive force. It has caused and will cause serious injury, further violating protesters', bystanders', and others' First and Fourth Amendment rights under the United States Constitution. The proven chilling effect of this threat of violence on First Amendment rights is presumed harmful.

The evidence submitted here warrants immediate temporary relief—particularly in advance of a planned June 11, 2020 visit to Dallas by President Donald Trump, during which he has stated he intends to discuss race relations and policing ahead of a $10 million dollar fundraising dinner. President Trump's visit is is likely to spur continued demonstrations and potentially more hospitalizations or deaths, either from projectiles or from gas. Accordingly, this temporary restraining order is urgently warranted for public safety.

## II.    SUMMARY OF THE REQUEST FOR TEMPORARY RESTRAINING ORDER

In the wake of the brutal May 25, 2020 killing of George Floyd by police officers in Minneapolis, Minnesota, hundreds of thousands of Americans have taken to public streets to protest police brutality and racial inequality. Dallas has been no exception, with peaceful protests occurring all across the city every single day since May 29, 2020 (the "2020 Protests"). Undeterred by the fact that police use of excessive force is the very subject of these demonstrations, DPD officers have repeatedly used extreme and lethal force against these crowds over the past thirteen days, targeting peaceful, non-threatening protesters and bystanders with lethal riot-control devices including tear gas, smoke bombs, flash-bangs, Pepper Balls, and mace, as well as "kinetic impact projectiles" (or "KIPs"), which include rubber, sponge, and foam bullets. And even amid a global pandemic respiratory disease, the City of Dallas and Chief

Hall have authorized police to target protesters with tear gas and smoke bombs—weapons that themselves cause respiratory distress—while inducing crowds to panic and flee, compressing large crowds into smaller spaces, increasing the likelihood the disease will spread and exacerbating the effects of Covid-19 among protesters. Rather than deescalate tensions and respond to the isolated instances in which protesters have threatened public safety with targeted and proportionate force, the DPD has used overwhelming and unconstitutional force to disperse peaceful protesters, journalists, and even bystanders, and the evidence shows a TRO is necessary.

  The purpose and effect of the City's and DPD's excessive force has been to restrict, frustrate, and deter protesters and press from exercising their rights under the First and Fourth Amendment to the United States Constitution: the rights to peaceful assembly, petition for redress of grievances, freedom of speech, freedom of the press, and freedom from the use of excessive force. Even the very threat or prospect of the use of KIPs and other allegedly "less lethal" weapons has and will continue to have the effect of chilling constitutionally-protected protest. In effect, the response by the City and DPD to these protests has been to curtail the right to protest in the first place. That is unconstitutional and the reason Plaintiffs now seek a temporary restraining order ("TRO") to enjoin the City, DPD, and Chief Hall from further use of weapons such as tear gas, smoke bombs, flash-bangs, Pepper Balls, and mace, as well as kinetic impact projectiles such as rubber, sponge, and foam bullets against protesters who are not posing any immediate threat of serious harm to anyone.

**A.    Plaintiffs suffered injuries as a result of the City, Chief Hall, and DPD officers violating their First and Fourth Amendment rights.**

Plaintiff Vincent Doyle, an aspiring photojournalist who is Black, went to Downtown Dallas to film and photograph the protests on May 30, 2020.[1] When he arrived and headed to the area near Bank of America, Mr. Doyle said the event was entirely peaceful, with approximately 100 to 200 people kneeling and chanting together. Suddenly, officers told the crowd to disperse and began indiscriminately firing tear gas at the crowd. Mr. Doyle stepped behind police to load more film into his camera, where he had a chance to observe officers' response to what was happening. Instead of expressing concern for citizens' safety, some officers were eating pizza and laughing together. Meanwhile, Mr. Doyle saw protesters being tear gassed, who then frantically tried to alleviate the symptoms and burning of the chemicals by pouring milk in their eyes. He also witnessed people experiencing homelessness who were shot with rubber bullets along with the protesters, as others tried to give aide to them.

Later, in compliance with police instructions to clear the streets, Mr. Doyle moved to a public parking lot. There, officers shot Mr. Doyle in the face with a sponge/rubber bullet KIP. As Mr. Doyle heard more projectiles and tear gas being fired around him, blood poured from his face. Mr. Doyle screamed, trying to warn protesters that more tear gas could be coming and began recording video with his phone. Other protesters came to Doyle's side to rush him to the hospital in their car but faced a roadblock, where police said they must await an ambulance indefinitely. At that point, Mr. Doyle felt tired and like he might pass out because he had lost so much blood. Instead police demanded Mr. Doyle's identification and tried to convince Mr. Doyle to incorrectly admit that he actually was hit with a *brick* by one of the *other protesters* instead of a

---

[1] *See* Declaration of Vincent Doyle in Support of Plaintiffs' Motion for Temporary Restraining Order.

PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER                                                                                                  5

sponge/rubber bullet shot by police—which was completely inconsistent with what Mr. Doyle saw, heard, and experienced.

The KIP left Mr. Doyle with approximately 40 percent visibility in his left eye and smashed his left cheekbone, which will likely require him to undergo surgery to have a metal plate implanted, with even further surgery and medical care likely required in the future. The brutality against Mr. Doyle has caused him immense physical, emotional, and mental pain, has disfigured his face, and left him physically impaired and unable to work—problems that will continue as he faces ongoing surgery and treatment, currently and in the future. Mr. Doyle remains a dedicated aspiring photojournalist and through the fear, anxiety and emotional distress caused by Defendants remains dedicated to observing and recording the ongoing protests in a peaceful exercise of his First Amendment rights. If Mr. Doyle is physically able, he says he would return to the 2020 Protests in Dallas if he knew that Dallas Police were prohibited from using the KIPs and other riot control devices and techniques against non-threatening protestors or in a manner that threatens his constitutional rights.

Plaintiff Tasia Williams, a protester who Black, was injured on the Margaret Hunt Hill Bridge on June 1, 2020, by a so-called "less lethal" bullet.[2] Ms. Williams was not at the front of the group on the Bridge when Dallas Police officers suddenly opened fire on the group of protesters. As she choked from the erupting smoke or tear gas, Ms. Williams moved to the left side by the bridge railing. Then, as the crowd retreated from police, Ms. Williams was left on the front lines, where officers shot two rubber or sponge bullets directly at her and a friend, striking Ms. Williams in the thigh. Ms. Williams immediately fell to the ground and screamed for medical

---

[2] *See* Declaration of Tasia Williams in Support of Plaintiffs' Motion for Temporary Restraining Order.

PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER                                                                 6

attention. As the officers advanced, they ignored Ms. Williams' medical needs but proceeded to arrest her regardless, zip-tying her hands behind her back, forcing her to lay on her stomach face-down on the pavement for over 30 minutes while officers zip-tied the hands of the nearly 700 other protesters.

Police then held Ms. Williams for nearly two hours on the bridge—bleeding and in pain—before providing her any medical attention, despite her pleas. Ms. Williams' eyes burned and her throat hurt for at least 30 minutes as a result of the tear gas shot by the Dallas Police. After hours of excruciating pain on the Bridge, an EMT from the Dallas Fire Department finally attended to her wound. When the EMT tossed aside the leftover gauze he used to bandage her bloody leg, Ms. Williams asked him to pick it up using a biohazard bag out of concern for transmitting COVID-19, in case she was an asymptomatic carrier of the disease; he was not concerned. By the time police finished processing her at least another hour later, Ms. Williams had temporarily lost the use of her leg. The injury to her leg has made it extremely difficult to stand for any extended period of time. Several days after her injury, the wound from the sponge bullet began to form a keloid in the middle of her leg which will likely require dermatological and other treatment. Ms. Williams continues to suffer from severe emotional distress due to her injuries.

Ms. Williams remains a dedicated activist and even through the fear, anxiety and emotional distress remains dedicated to continuing actively protesting in a peaceful exercise of her First Amendment rights. The incident damaged Ms. Williams' trust in police, the City, and government, and she has seen firsthand the very police brutality she showed up to protest. But despite her own suffering, Ms. Williams says she would return to the 2020 Protests in Dallas if she knew that Dallas Police were prohibited from using the KIPs and other riot control devices

and techniques against non-threatening protestors or in a manner that threatens her constitutional rights.

**B.     This Court should grant this request for a temporary restraining order because Plaintiffs satisfy all four elements required to injunctive relief.**

Because Plaintiffs' circumstances satisfy all four elements required to issue an injunction, this Court should grant Plaintiffs' motion.

**1.     Plaintiffs are likely to succeed on the merits of their First and Fourth Amendment claims.**

The City's and Chief Hall's authorization of the use of less-lethal weapons to control and suppress has chilled and is chilling Plaintiffs' rights to assemble, petition for redress of grievances, freedom of speech, and freedom of the press, and constitutes retaliation in violation of the First Amendment. The United States Supreme Court has upheld preliminary injunctions based on the First Amendment where police action chills people from exercising their First Amendment rights. The United States Supreme Court has upheld preliminary injunctions based on the First Amendment where police action "chill[s] the willingness of people to exercise their First Amendment rights." *Allee v. Medrano*, 416 U.S. 802, 810 (1974).

The City's policies and practices have been overbroad and underinclusive: rather than focus on arresting, the DPD has hurled canisters of tear gas and smoke at entire crowds of peaceful protesters and indiscriminately fired KIP guns at individual protesters not involved in any conduct that threatens to harm people or property. The use of such excessive deadly force is not "narrowly tailored" and necessary for keeping roadways clear or for preventing property destruction—neither of which are compelling. Thus, the DPD's policies and practices do not survive strict scrutiny. Further, since the DPD's force is directed squarely at suppressing free

expression—and restricts First Amendment freedoms far more than necessary to keep roadways clear and protect property—the policies and practices also fail intermediate scrutiny.

The City's actions also violate the Fourth Amendment prohibition on excessive force, and the First Amendment rights at stake strengthen that claim. The City's authorization of the use of allegedly "less lethal" weapons against protestors, bystanders, and press as a means of "crowd control," absent *any* imminent threat of serious harm to anyone, is inherently excessive, and violates the Fourth Amendment.

2. **Plaintiffs are likely to suffer irreparable harm if an injunction does not issue.**

It is well-established that the loss of constitutional rights constitutes irreparable harm, particularly where the First Amendment is concerned. Loss of First Amendment freedoms—even for minimal periods of time—constitutes irreparable injury. As Plaintiffs' testimonial evidence in support of this Motion confirms, the actions of DPD officers, authorized and directed by the City and Chief Hall, have the effect of blocking demonstrators, bystanders, and press from fully exercising their First Amendment rights. This evidence further demonstrate that the Defendants' actions chill Plaintiffs' prospective exercise of their rights.

The tactics of the City, Chief Hall, and DPD officers also cause irreparable harm under the Fourth Amendment. It is well-established that using deadly force against a person who does not pose an immediate threat of serious harm violates the person's Fourth Amendment right to be free from excessive force. Firing weapons that—although allegedly "*less* lethal" than firearm rounds—are nonetheless *still* lethal constitutes excessive force when used against non-threatening people. Plaintiffs and other protesters, bystanders, and press will continue to face

excessive deadly force unless Chief Hall and DPD are enjoined from using such weapons against non-threatening people.

       3.      **The threatened injuries to Plaintiffs outweigh the threatened harm to the City of Dallas, Chief Hall, or the DPD officers.**

DPD's use of allegedly "less lethal" devices to control crowds during protests harms not just the Plaintiffs in this lawsuit but many similarly situated people seeking to exercise their First Amendment rights, including members of the press. Rather than develop a narrowly tailored policy to deal with the scarce few disruptive protesters , the City has chosen an overbroad one: punish all protesters (as well as the press who cover their demonstrations and bystanders who may be nearby) with chemical weapons such as tear gas, smoke bombs, flash-bangs, Pepper Balls, mace, and KIPs such as rubber, sponge, and foam bullets—among other riot-control weapons and techniques—rather than specifically deal with any individual persons who allegedly pose a threat to others or are causing damage. Whatever interest the City might have in preventing property destruction or keeping roadways safe does not and cannot justify continuing to deploy lethal weapons against peaceful protesters. Moreover, an injunction is in the public interest because public health officials have made clear that the use of chemical agents—such as tear gas, smoke bombs, Pepper Balls, and mace—pose a significant risk of spreading and exacerbating the ongoing Covid-19 pandemic.

       4.      **Granting the preliminary injunction best serves the public interest.**

Finally, it is always in the public interest to prevent the violation of a party's constitutional rights. Indeed, if the City and Chief Hall agree that safety is in the public interest, then it is reasonable to conclude that it is in the public interest to keep protesters, bystanders, and press safe from DPD officers using lethal force against them under the guise of keeping roads and

property safe. Accordingly, granting this temporary restraining order is undeniably in the public's interest.

Because the City has and, under Chief Hall's authority, continues to pursue a policy of excessive force against peaceful protesters in violation of their First and Fourth Amendment rights, Plaintiffs request that the Court issue an order enjoining the indiscriminate use of this "less lethal" force on non-threatening demonstrators.

### III.   CONCLUSION & PRAYER

For these reasons and for the reasons more fully stated in Plaintiffs' Brief in Support of Motion for Temporary Restraining Order and Plaintiffs' Appendix in Support of Motion for Temporary Restraining Order, Plaintiffs respectfully request that this Court grant this Motion for Temporary Restraining Order. Plaintiffs respectfully request that this Court enter an order against the City of Dallas and City of Dallas Police Chief Renee Hall, enjoining them from future use of chemical agents, including but not limited to tear gas, smoke bombs, flash-bang grenades, Pepper Balls, and mace, as well as kinetic impact projectiles or KPIs, including but not limited to rubber, sponge, wood, and foam bullets against protesters, bystanders, and press who are not posing any immediate threat of serious harm to anyone and/or as a means of "crowd control." Plaintiffs further request any other relief to which they may be entitled in law or equity.

Respectfully Submitted,

By:*/s/  Michelle Simpson Tuegel*
**Michelle Simpson Tuegel**
TX Bar No. 24075187
*Admitted*
**THE SIMPSON TUEGEL LAW FIRM**
3301 Elm St.
Dallas, Texas 75226
214-774-9121 (P)
214-614-9218 (F)
michelle@stfirm.com

**Daryl K. Washington**
TX Bar No. 24013714
*Admitted*
**WASHINGTON LAW FIRM, PC**
325 N. St. Paul St., Suite 3950
Dallas, Texas 75201
214-880-4883 (P)
214-751-6685 (F)
dwashington@dwashlawfirm.com

**Daniel A. Dailey, Esq.**
IL Bar No. 6312616
*Admitted*
ddailey@kingdomlitigators.com
**Tatiauna J. Holland, Esq.**
TX Bar No. 24090519
*Pro Hac Vice Admission Pending*
tjh@tjhollandlaw.com
**Adam Greenfield**
TX Bar No. 24075494
*Admitted*
**KINGDOM LITIGATORS, INC.,**
***A Public Interest Law Firm***
100 Crescent Court Ste. 700
Dallas, Texas 75201
(214) 422-9350 (P)
(469)736-0022 (F)

        **Morgan A. McPheeters**
        TX Bar No. 24081279
        *Admitted*
        **MCPHEETERS LAW, PLLC**
        4447 N. Central Expy., Suite 101 #158
        Dallas, Texas 75205
        469-862-8233 (P)
        morgan@mcpheeterslaw.com

        **Jessica Foster**
        TX Bar No. 24094123
        *Admitted*
        1408 N. Riverfront Blvd., Suite 241
        Dallas, Texas 75207
        (214) 865-9742 (P)
        jfoster@jfosterlegal.com

        **George Oginni**
        TX Bar No. 24108191
        *Pro Hac Vice Admission Pending*
        **LEO & OGINNI TRIAL LAWYERS, PLLC**
        3801 Kirby, Suite 605
        Houston, Texas 77098
        (713) 280-3204 (P)
        george@helpishere.law

        **ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF CONFERENCE

     Pursuant to Fed. R. Civ. P. 65 (b) (1) (B), and this Court's Local Rules, the undersigned counsel conferred with the City of Dallas Executive Assistant City Attorney Tatia R. Wilson via email on June 10, 2020, regarding the relief requested in this Motion. Ms. Wilson advised that she would be lead counsel on this matter for now and that she is authorized to accept service on behalf of the City of Dallas and Chief Renee Hall for pleadings and filings related to this matter. Ms. Wilson further advised that the City was evaluating the relief requested in this Motion and would provide Plaintiffs the City's position as soon as possible. As of the time of filing of this Motion, Plaintiffs had not yet heard back from the City.

        */s/ Michelle Simpson Tuegel*
        Michelle Simpson Tuegel

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, this Court's Local Rules, and agreement of counsel, the foregoing Plaintiffs' Motion for Temporary Restraining Order was electronically served on the following via email:

**Christopher Caso**
City Attorney
chris.caso@dallascityhall.com
**Tatia R. Wilson**
Executive Assistant City Attorney
tatia.wilson@dallascityhall.com
**DALLAS CITY ATTORNEY'S OFFICE**
1500 Marilla St., 7DN
Dallas, Texas 75201
(214) 671-9553 (P)
(214) 670-0622 (F)

*/s/ Michelle Simpson Tuegel*
Michelle Simpson Tuegel